Barstow *v*. Adams.

In the Court below,

SAMUEL BARSTOW, and NATHAN WILLIAMS, assignees of
*Asahel Adams*, a bankrupt, *Plaintiffs ;* WILLIAM ADAMS,
PHINEHAS ADAMS, and SEPTIMIUS LATHROP, *Defendants.*

Assignees of
a bankrupt,
under the
late bank-
rupt law of
the U.States,
may main-
tain eject-
ment.
The validity
of a commis-
sion of bank-
ruptcy can-
not be im-
peached be-
fore the com-
mon law
courts.
By the term
"*debtor*," in
the 56th sec-
tion, is meant,
any person
who owes a
" *debt*" or
" *duty*," or
against
whom a "*de-
mand*" ex-
ists.

THIS was an action of ejectment.

The defendants pleaded in bar, that the commission is-
sued on the petition of *John Parish*, Esq. he being the sole
petitioning creditor ; that his debt did not exceed $ 560—but
that sundry other creditors had assigned to him certain
notes against the bankrupt, upon no other consideration than
that they should receive a dividend under the commission,
in proportion to their respective notes, which, with Parish's
own debt, did not exceed $ 1100 ; that the bankrupt was not
indebted to any one creditor to the amount of $ 1000,—
nor to two creditors to the amount of $ 1500,—nor to a
greater number, to the amount of $ 2000 ; and, therefore,
that the commission was illegally taken out, and void.

The plaintiffs replied, that *Parish's* single debt, including
notes legally assigned to him, amounted to more than
$ 1000 ; that *Adams* had been duly declared a bankrupt ;
that the defendants had proved a debt under the commis-
sion ; that the plaintiffs had been regularly chosen as-
signees ; that, before the bankruptcy, the demanded pre-
mises had been conveyed by the bankrupt to the defend-
ants, without consideration, to defraud his creditors ; and
that the estate and effects of the bankrupt had been as-
signed to the plaintiffs.

A demurrer and joinder closed the pleadings.

Judgment was rendered for the defendants.

The general error was assigned.

*R. Griswold*, and *Williams*, (of Hartford,) for the plaintiffs in error.

This is an action of ejectment, brought by the assignees of a bankrupt, for the real estate of the bankrupt in the possession of the defendants ; and two objections are made to their recovery—That the statute does not authorize the assignees of bankrupts to sustain an action of ejectment ; and that the debt of the petitioning creditor was not such an one as would support the commission.

1. Can the assignees of a bankrupt sustain an action of ejectment ?

The statute of the United States authorizes the commissioners to convey to the assignees the *interest* in all the real estate of the bankrupt. By the 5th section, the commissioners are authorized to take into their possession all the estate of the bankrupts, both real and personal. By the 11th and 17th sections, they are authorized to assign and convey to the assignee the real estate of the bankrupt : and their deeds are to be good and effectual against all persons who would be barred by the conveyance of the bankrupt. The whole estate, therefore, of the bankrupt, which he possessed at the time of the act of bankruptcy, by this assignment, vests in the assignee;(*a*) and the assignee having the interest, the general law gives the remedy. The statute does not, indeed, expressly say, that the assignee may maintain an action of ejectment. Neither does the statute declare, that a purchaser of such an estate under a sale at auction, which the assignee may make, can maintain this action. Nor have we any statute, that the heir may maintain this action upon the death of the ancestor ; or that any person dispossessed of lands which he owns, may sustain an action to recover possession thereof. But the right of action in these cases results from

(*a*) *Lex Merc. Amer.* **513**.

1805.

BARSTOW
*v.*
ADAMS.

the general principle of the common law, that there is on injury without a remedy. And that principle is applicable as well to the assignee of a bankrupt as to any other person. For, in vain would the law have so anxiously directed, that the property should pass to the assignee, if when he acquired the interest, he could have no means of gaining the possession.

The English statutes relating to bankrupts do not provide, that the assignees may bring actions for real property. But they undoubtedly may sustain such suits. (b) And the only enquiry there made upon these suits is, not whether the statute gives an action, but whether the *interest* passed to the assignees. And in the recent case of *Smith* v. *Coffin*, (c) it seems to be admitted, that if the interest of the bankrupt in the property in question passed by the assignment, the action must be maintained by the assignee. When this construction has been given to the English statute, and that known to our legislature, will our courts say, that similar words used to pass the interest shall convey the mere naked interest, unaccompanied with the means of securing it? Are the assignees of bankrupts alone to be deprived of the general remedy given for the protection of property? And is the real estate of the bankrupt to be resigned to the claim of the " sturdy occupant," because the statute, which vests in them the interest, has not, in words, given them a right of action, with which to defend it?

2. Can the defendants avail themselves of the facts stated in their plea, to shew, that the petitioning creditor had not such a debt as would support the commission?

Without examining the facts disclosed in the plea, and without adverting to the manner in which they are stated, or their sufficiency if well stated; it is enough for the plaintiffs to shew, that *this Court* cannot enquire into those facts.

(b) '*Esp. Dig.* 437.      (c) 2 *H. Bla.* 461.

And it is contended, that the bankrupt law of the United States has directed, that this enquiry should be made before the commissioners and the courts of the United States ; and that their opinion should be conclusive upon other courts.

It is admitted, that by the English law, the assignees must make out their title, by proving the trading, the act of bankruptcy, the debt of the petitioning creditor, &c.(*d*)

That law, though the result of more than two centuries experience, was not found, in all its details, perfectly applicable to our situation and circumstances.

The constitution provides, that Congress may establish an uniform system of bankruptcy (*e*). The system, about to extend throughout the several states, could not be *uniform*, if the several state courts were to decide upon its several parts. Nor would the same decisions take place, upon the same facts, in one case, if each state court, before whom the assignees must bring actions, were to decide upon the facts which gave to the assignees their title. No common head would render their decisions alike, as in England. Our legislature have, therefore, vested the power in the several district courts of the United States.

By the 56th section of the bankrupt law, it is provided, that when the assignee of any bankrupt shall prosecute any debtor of a bankrupt, for any debt, duty or demand, the commission, &c. assignment, &c. shall be conclusive evidence of the issuing of the commission, and of the person named therein being a trader, bankrupt, &c.

This section, which is not to be found in the English law, was intended to prevent the assignee from being subjected, in every suit he might bring, to prove those facts, which have once been established before the commissioners ; and from

(*d*) *Cul. B. L.* 411. *Coop. B. L.* 380. 335. *'Esp. Dig.* 545. *Dub. edit.*

(*e*) *Art.* I. *sect.* 8.

E

that variety of decisions, which might result from the peculiar organization of our judicial system.

This section makes the commission, &c. not *prima facie* evidence, as in the 34th section, but conclusive evidence, not to be contradicted. So it has been held in England, under another clause of the statute, [5 *Geo. II. ch.* 30.] that though under that clause the certificate may be attacked, the commission cannot be. (*f*)

But it will be said, that this section speaks only of *debtors* of the bankrupt; and that a defendant in an action of ejectment cannot be considered as a debtor. But the word " *debtor*," being in some measure of equivocal import, is to be explained by the words accompanying it; and those are " *for any debt, duty or demand."* Now the claim of the defendant, in an action of ejectment, is, as it respects the defendant, as much a claim, or demand, as the claim of the defendant, in an action on a bond, is a debt. And if those words in the statute are to be confined to the claim of the bankrupt against those technically called his debtors, then they are wholly inoperative, and might as well have been omitted; while our construction gives efficacy to every word used.

But the narrow construction contended for, would entirely defeat the intention of the legislature in this provision. In all that class of cases, where property is demanded in a form of action sounding in *tort*, the assignee must prove the trading, act of bankruptcy, &c. as in England. But if the action sounds in *contract*, he need not. The legislature could never have intended, that more evidence should be required to prove the title of the defendant against a thief, or a trespasser, than against a mere debtor. It would be absurd to suppose, that it was intended, that if the assignee of a bankrupt should bring a suit upon a note (given to the bankrupt) against the maker, that the mere production of the com-

(*f*) *Bateson* v. *Hartsink*, 4 *'Esp.* 43.

mission, &c. should be sufficient evidence of the bankruptcy, &c. but that if he brought an action for stealing or destroying the same note, he must not only produce the commission, &c. but must prove all the facts which had been before proved to obtain it.

Further, the construction contended for by the defendants would prevent the system from being *an uniform system*. The commissioners might decide that an act of bankruptcy had been committed ; and the state courts must, of course, enforce the claims of the assignee against the *debtor* of the bankrupt. But if the state courts, upon examination, were of opinion, that the commissioners had misjudged in any part of their proceedings, then they would refuse to enforce the claims of the assignee, in any action of trover, trespass, &c. which he might commence :—And while, upon claims of a certain description, they treated the plaintiff as assignee, and aided him to recover the property of the bankrupt, in another class of claims, they would refuse to consider him as assignee, and as entitled to the property of the bankrupt. There being no common forum to which to resort,—all must remain unsettled, with regard to the particular estate ; and all confusion, with regard to the general system. Such could not have been the intention of a legislature about establishing " an uniform system." Nor do the words they have used require such a construction.

So anxious were the legislature upon this subject, that in the 52d section they have provided, that if either the creditor, or the bankrupt, shall think himself aggrieved, by the determination of the judge, or commissioners, relative to any material fact in the progress of the proceedings, &c. he, or they may demand a jury, for the trial of such facts, and judgment being entered upon the verdict of that jury *shall be final* on *such facts*. This provision was introduced to prevent the various decisions, which might be made, if courts differently constituted and organized— courts from which there was no common dernier resort,

1805.

BARSTOW
v.
ADAMS.

might decide differently upon the same facts. If, then, in the case before the Court, one of the creditors of the bankrupt had denied the petitioning creditor's debt, and had prayed for a jury,—and the debt had been found by the verdict of that jury,—the validity of the debt would then have been established,—and must have remained incontrovertible. And it can make no difference that, in this case, a jury has not been called out, upon this question, any more than in any case, where a party is allowed an appeal, and neglects to appeal. In such cases, the sentence of the inferior court is as final and conclusive upon the case, as the judgment of the superior court would have been, had an appeal been taken. " The commissioners," says Lord KENYON, " are a " court of justice." (g) In England, their decisions may be reviewed in the common law courts ; in this country, in the courts of the United States.

But, it may be said, that if the defendants were not creditors they could not procure a jury, upon their application to the district judge ; and can, therefore, have no hearing, unless in this way. The same may be said by a person who has attached the property of his debtor, which had been previously attached ; that the first attaching creditor had, by his judgment, recovered more than was due to him, and that he, the second attaching creditor, had no opportunity to be heard. Still, however, that judgment must be final, and conclusive. The commission of bankruptcy is in nature of an execution in favour of all the creditors ; (h) and a person claiming the goods taken by it cannot be permitted to say, that the court ought not to have granted this execution.

If an alien of vile character, and who had resided here a shorter time than the law requires, should obtain a certificate of naturalization from the court of the United States, and should then bring a suit in our state court ; could his debtor plead that he was an alien ? And would our courts go into an enquiry whether the Circuit Court had proceeded

(g) 5 *Term Rep.* 210.
(h) *Ex parte Wilson*, 1 *Atk.* 179 [152.]

legally in naturalizing him ? Surely, it would be no suffi-
cient reason for this, that the defendant had no opportuni-
ty to shew these facts in the Circuit Court.

It is, indeed, no new principle, that the judgment of a
court of competent jurisdiction is not to be enquired into,
or contested. (*i*) Thus, the sentence of the spiritual court
is conclusive upon a question decided by it, within its juris-
diction. (*j*) And it is as conclusive upon *third persons*,
as upon the parties ; as in case of administration granted ; (*k*)
or in case of deprivation. (*l*) So, if a marriage is by that
court declared void, the sentence is conclusive. (*m*) And the
certificate of the bishop, as to certain facts, is conclusive
upon all the world. (*n*) So, the condemnation of a prize
ship, in courts of admiralty, is conclusive upon all
persons. (*o*) So, under the revenue laws, a condemna-
tion by the court of exchequer, is conclusive. (*p*) So, in
this State, the allowance of the account of one creditor, by
the commissioners on an insolvent estate, is conclusive
upon other creditors : they cannot appeal. (*q*) And the
words of this section of the bankrupt law shew conclu-
sively, that it was intended, that the decision made in the
manner there pointed out, should be conclusive—not mere-
ly *in the case* as between those parties, but *upon the facts*
as they might affect all persons.

But in this case, it appears from the pleadings, that the
defendants proved a debt under the commission ; and if they

(*i*) 2 *Burr.* 1009.
(*j*) 7 *Rep.* 141, *Kenn's case. Cro. Jac.* 186, *Robertson* v. *Stallage.*
(*k*) 1 *Salk.* 290, *Blackham's case.*
(*l*) 2 *Lev.* 14, *Rex* v. *New-College.*
(*m*) 4 *Rep.* 29, *Bunting* v. *Lepingwel. Moor* 169, *S. C.*
(*n*) *Bul. Ni. Pri.* 145. '*Esp. Dig.* 769, *Dub. edit.*
(*o*) '*Esp. Dig.* 145. 7 *Term Rep.* 696, *Geyer* v. *Aguilar.*
8 *Term Rep.* 195, *Christie* v. *Secretan.*
(*p*) *T. Raym.* 336, *Ekins* v. *Smith.* 2 *Bla.* 977, *Scott* v. *Shear-
man.*
(*q*) 2 *Root,* 397, *Banks* v. *Basset.*

1805.

BARSTOW
*v.*
ADAMS.

were creditors, it must be conceded, that they are bound to take the remedy pointed out by the statute. If they were not, perhaps the district judge might extend that general chancery power, which is vested in him, to them ; and the argument that they had not been heard would be more properly addressed to that court, than to this.

But what claims have the defendants to be heard upon the question of the debt of the petitioning creditor ? They appear upon this record as mere trespassers. And surely, they ought not to complain,—that they were not permitted to be heard upon a question between the bankrupt and his creditors.

*Goddard*, for the defendants in error.

The first question in this case not having been made by counsel before the Superior Court, when the judgment complained of was rendered, I am not prepared fully to discuss it. The Superior Court have assigned, as one of the reasons of their judgment, that assignees of a bankrupt's estate cannot maintain an action of ejectment. From an examination of the bankrupt act, it may be contended, that assignees have no *interest* in the estate conveyed to them. It is not even necessary that they should be creditors of the bankrupt. They are mere trustees ; authorized to take conveyances of property ; to sell it at public auction, or otherwise ; to convert it into money ; and, under the direction of the commissioners, to divide it amongst the creditors. And, from the short time which is limited for making a final dividend among the creditors, being only eighteen months, it is presumed to have been the intention of the framers of the act, that the estate of the bankrupt should be speedily sold ; and questions relative to the validity of his title to real estate, if any existed, should be made by the purchasers, and not by the assignees. The power of assignees, in relation to this subject, may be likened to that of administrators, who, by statute, are authorized to sell lands for the pay-

ment of the debts of the intestate ; and I am informed, that it has been decided by the courts in this State, that administrators cannot maintain ejectment. It must, however, be admitted, that assignees of a bankrupt's estate in England do maintain ejectment.    And it may be difficult to distinguish our system from theirs, in this particular.

Submitting this question to the consideration of the Court, I proceed to examine the second, viz.   Whether it is competent for defendants, in actions of ejectment, by assignees of a bankrupt's estate, to impeach the validity of the commission, under which they act, and shew that it was obtained by fraud ?

It is admitted by the counsel opposed to me, that if the question was made before a court competent to decide upon the facts disclosed in the pleadings, this commission could not be supported.  But it is contended, upon several grounds, that these facts cannot be enquired into before the common law courts, in actions brought by assignees.

I take it also to be admitted, that under the English system of bankrupt laws, in *all* actions, brought by assignees of a bankrupt, it is necessary for them to prove the petitioning creditor's debt ; that the party was a trader, and a bankrupt ; and that the commission regularly issued.

This admission notwithstanding, it is contended, that, *on general principles*, the proceedings of the district judge and commissioners, in relation to the estate of a bankrupt, are to be considered in the light of a judgment of a court of competent jurisdiction, and conclusive, not only on the parties, but on all the world.

The bankrupt act of the United States having been copied, in most of its important provisions, from similar provisions in the English bankrupt system, it is but fair to suppose, that the legislature of the United States, in adopting the law

1805.

BARSTOW
v.
ADAMS.

of that country, meant to adopt also the construction which had been given to it, by the courts in that country : And in cases where they meant to alter the law, as at present settled by the adjudications of their courts, they would do it in the most plain, intelligible, and decisive language.

But the proceedings of commissioners in that country, are not deemed judgments. The *commissioners* are not, therefore *judges*. They do not constitute a *court of justice*. They are viewed only as persons to whom *special* powers are delegated, for *special* purposes. (*r*)   Such persons must strictly pursue the authority under which they act.   Commissioners of bankruptcy, and indeed the district judge, under our statute, and their authority , may be likened to the justices of the county of Surry in England, to whom, on application of the mayor, aldermen, and common council of the city of London, in a particular manner, power is given to impannel a jury, to assess the value of lands necessary for a road, &c. upon which, if strictly pursued, the owner is obliged to sell his land.   Lord MANSFIELD, in the case of *Rex* v. *Croke*(*s*) says this is a  special authority, delegated  by an act of Parliament, to particular persons, to take away a man's property and estate against his will ; and therefore, must be strictly pursued, &c.  And although, in that case, the justices of Surry called themselves a court, and impannelled a  jury, &c. yet the  court of King's Bench, not only enquired into their proceedings, but decided them to be irregular and void.

But so far from considering commissioners of bankruptcy in England, as a court, whose decisions are conclusive, until reversed, they are liable to be sued ; and so are assignees appointed by them ; and are not protected by their judgments, if indeed in any sense, they may be called judgments. 2 *Wil.* 383, *Perkins* v. *Proctor.* 4 *Burr.* 2064, *Sanderson* v. *Rawles.* These cases proceed on the ground, that the person claimed to be a bankrupt was not subject to

(*r*) 8 *Rep.* 121.   1 *Ld. Raym.* 467. 580.   (*s*) *Cowp.* 24.

the bankrupt laws, and as the commissioners exercise only a limited, and special authority, their proceedings, so far from being conclusive, could not protect them, or their agents, the assignees, from trespass.

But has the act of Congress invested commissioners with more judicial authority, than the bankrupt system of England? Certainly not. Their powers and duties are much the same. So far from *commissioners* acting in a judicial capacity, the *district judge* can scarcely be said to act in that character, in performing any duty enjoined on him by that act. The case in which the district judge appears most to act in the judicial capacity, and render a *judgment* on a hearing of the parties, is, in allowing, or disallowing the bankrupt's certificate, under the 36th section. And in this case, that very judgment, by another section of the same act, viz. the 34th, is subjected to the revision of the state courts, and is only *prima facie* evidence of the fact, expressly found and decided. And it is remarkable, that when speaking of the powers and duties of the district judge, in this act, the *district court* is no where spoken of; but the duties are to be performed, not by the *district court*, but by the *district judge*. It has been questioned, and is, indeed, very questionable, whether any of the proceedings of the district judge, are examinable in the higher courts of the United States. Because, when acting in relation to bankrupts' estates, the judge does not hold a district court. By the 51st section, the proceedings under the bankrupt act, are to be filed in the office of the clerk of the *district court ;* and copies are declared to be evidence, in like manner as the copies of proceedings of that court are admitted in other cases. Here, when the *district court* is spoken of, the legal name is given to it. Besides, if the judge acted in a judicial character, there was no necessity for an act of Congress to declare that the proceedings, when holding a district court, should be admitted in evidence. Under the 52d section, to which we have been referred for redress, by application to the district judge, praying for a jury, where,

M

1805.

BARSTOW
*v.*
ADAMS.

and where only, it is said the facts which we plead can be enquired into, the district judge is authorized only "to preside over the forms of the deliberations of a jury." And their *verdict*, may set aside and correct his *judgment*, and, not only the commissioners, but the judge himself, must regulate his proceedings agreeably to such *verdict*. And the judgment of the judge, complained of to a jury, before the same judge, and by such jury reversed, and corrected, is claimed to be conclusive, not only upon parties and privies, but upon all the world!

But if the district judge, and the commissioners by him appointed, are to be considered as courts, and their proceedings as judicial; on whom are they binding? On those only who are parties or privies to them. It is not in the nature of judgments *generally*, to bind further that this. (s) Matrimonial causes, arising in the spiritual courts; causes in admiralty courts; in cases regarding probate of wills, &c. all persons are said to be bound by them, because all the world are parties. In *Peake's Law of Evidence*, p. 54, it is said, that in cases where every person has an opportunity of coming into court, and being made a party to a suit, as in all proceedings *in rem*, and probates of wills, &c. the sentence binds *all persons*, and none can impeach it collaterally, &c.(t) But the same author, p. 51, says, that in these cases, *a stranger* is always at liberty to shew, that such judgment, sentence or decree, was obtained by fraud and collusion, between the parties to it; for fraud is an extrinsic, collateral act, which vitiates the most solemn proceedings of courts of justice; and though it is not permitted to shew, that a court was *mistaken*, it may be shewn, that it was *misled*. (u) Adopting this single principle will, it is apprehended, be sufficient to bring into review, before the state courts *incidentally*, almost every commission of bankruptcy, which

(s) *Peake's L. E.* 26. *first edit. Gilb. L. E.* 34, *old edit.*
(t) Cites 11 *State Trials*, 218, 222.
(u) Cites 4 *Co.* 29 *a*, 11 *State Trials* 262, *Harvey's case.*

has been issued in this state.   Abundantly sufficient is it for our purpose, in this case.

If, therefore, the act of Congress should declare, in express terms, that the district judge and commissioners are judges, and their proceedings to be viewed as judgments, and as containing absolute verity, it must always be understood, as sanctioning none but fair judgments ; not those obtained by fraud.   For fraud contaminates and renders void every thing infected with it.

Having seen, that there is nothing in the general nature of our bankrupt system, which places the proceedings of the commissioners on higher ground than they stood in England : I proceed to examine the 56th section, which is said, and correctly said, to contain provisions not to be found in the English system.   That section provides, that " in all cases, where the assignees shall prosecute any " *debtor* of the bankrupt, for any *debt*, *duty* or *demand*, the " commission or certified copy thereof, &c. shall be *con-* " *clusive* evidence of the issuing the commission, and of " the person therein named, being a trader and a bankrupt, " at the time mentioned therein."

Before this section is considered, permit me to state who the defendants on this record are.   They are stated to be in possession of a tract of land, which, they say by their plea, they claim by deed from *Asahel Adams*, the bankrupt, prior to his committing an act of bankruptcy.   The plaintiffs claim the land from them, by suit in ejectment as assignees under the commission.   The defendants *as possessors of this land*, are *strangers* to the commission of bankruptcy, and all proceedings under it : and unless they can contest the validity of the commission here, I will attempt presently to shew, that they can do it no where, and may, by the operation of this law, if as to them these proceedings are conclusive, be deprived of an estate *unheard*, to which, but for this law, and this commission, they had good title.

Let it be remembered, when we are seeking for the true construction of this section, that the framers of this act knew that, by the language here used, they were essentially departing from the English system, which they had before copied. They doubtless meant to remedy, what they deemed a defect, in that system. They knew, that these assignees must, in all actions brought by them, prove the petitioning creditors' debt, and, indeed, every thing spoken of by this section. When they sued a bond, not only the subscribing witnesses to that bond must be produced ; but the subscribing witnesses, also, to the bond, upon which the petitioning creditors prayed out the commission. In the mere matter of the collection of debts, due to the bankrupt, it was seen, that this would produce mischief. The framers of the act must also have known, that most, if not all of the disputes, which have arisen, and probably would arise, between assignees and others, would be made in actions of ejectment, trespass, or trover. They must have been aware, that by various sections of the bankrupt act itself, a door was opened to disputes about property, both real and personal. Commissioners, by the 17th section of the act, are authorized to assign property, which they deem fraudulently conveyed ; and by the 27th, which they find in possession of the bankrupt, and over which he was exercising ownership by consent of the owner,&c. In all these cases, commissioners may judge wrong. The whole case was not before them. And can it be supposed, that Congress meant to pass a law, which, in its operation, would preclude the real owners of this property from shewing, that there was no fraud ; no consent? Or indeed that the man against whom the commission issued, was neither a trader nor a bankrupt ; and that there was safety in trusting property in the hands of a man, who was not subject to the bankrupt laws? In all these cases, actions would be brought founded on *tort*. And it is begging the question to say, that the defendants are trespassers, or tort-feazers, and therefore not to be favoured. Enough for the legislature of the Union was it to know, that important disputes, in which the rights of third persons,

not parties to the bankrupt proceedings, would be implicated, might, had, and probably would again arise.

To such persons they have left the door open, limiting, at the same time, the range of inquiry allowed in England. To the mere *debtor* of the bankrupt, they have said, " You may shew, that you do not owe the debt, which is claimed of you ; but you shall shew no more. Payment to the assignees, or a recovery by them, will for ever exonerate you, if the commission is ever so fraudulent. *You*, therefore, cannot suffer." But is this the case with persons, who claim land by purchase from the bankrupt, prior to issuing the commission ? Not so. A man who is not a trader owes me $ 1000. I know that he owes A. $ 500, and B. $ 500, and he has property to the value of $ 1000 only. I obtain a conveyance in satisfaction of my debt ; and the debtor, if a trader would be guilty, under the bankrupt act, of a fraud upon A. and B. by giving an undue preference to me. And, if he was a trader, my coneyance would be a fraud upon the bankrupt law, and void. Not being a trader, it is good, and such an one as the law protects me in taking. A. and B. by fraud and collusion with my grantor, put their debts together, and pray out a commission of bankruptcy, and sue me in ejectment, if real, or trover, if personal estate. If my grantor was a trader and liable to a commission, my conveyance, although I have paid a fair price for the property, is bad. If he was not a trader, nor liable to a commission of bankruptcy, it is good. My defence consists in this, that I bought and paid a fair price for the property of a man, who was no trader, nor liable to a commission. Where shall I make my defence ? Before the commissioners, district judge, and jury ? No : I will shew, that the act does not permit it. If I cannot do it before the common law courts, I am remediless. And my property, honestly acquired, passes into other hands, whose progress to obtain it, has been marked with fraud and perjury. Precisely such will be the condition of a man, who secures property by attachments. Could the legislature who framed the act, mean this ? Certainly not. Nor will their language

1805.

BARSTOW
v.
ADAMS.

bear such a construction. If the construction of this 56th section is to be as broad as is contended for, why was not the language concisely this—" In *all actions* which shall be brought by assignees, &c. the commission, &c. shall be conclusive evidence ?" But the framers of the act proceed cautiously,—" *In all cases, where the assignees prosecute any debtor*, &c. for any *debt, duty or demand*." But these last words are claimed to enlarge the construction. Not so. It must be a prosecution for a *debt, duty or demand ;* but must still be against a *debtor*, and a debtor of the bankrupt. It is saying no more than this, where the assignees bring any suit against one who is a debtor of the bankrupt, or is sued as such, for any claim they may have upon him *as* debtor, whether by bond, note, book, or in any shape, where money is claimed, and he may, in any sense, be said to *owe* the estate of the bankrupt money, be the suit which shall be brought to recover that money, called what you please, these proceedings, *as to him*, shall be conclusive. For he never can suffer, if he once pays what he owes. Persons on whom the assignees have disputable claims about *property*, and who in no sense of the word can be considered as *debtors* of the bankrupt, may and will suffer, if proceedings, to which they were neither party nor privy, should be held to be conclusive as to them. By the 48th section of the bankrupt act, penalties given by the act for the benefit of creditors, are to be recovered by the assignees by action of debt. In some sense, those who have incurred those penalties, may be styled *debtors*. But in no sense, can they be considered as *debtors of the bankrupt*. If they are sued for those penalties, may they not shew, that all the proceedings under the commission are fraudulent and void ? That the man was no trader ? And, therefore, the acts which they did were innocent, and exposed them to no forfeiture ?

It has been attempted to extend the provision of the statute of this state " for the recovery of debts out of the estate or effects of absent or absconding debtors" in such manner, as to secure other claims arising out of *torts*. But this has ne-

ver been permitted. The courts have always decided, that the provisions of that act extend only to *debtors*. Indeed, it is torturing language to say, that *debtors* may mean *trespassers*.

But if it can be shewn, that the defendants in this case are remediless, unless they are permitted to impeach the validity of the commission, that, of itself, would furnish a strong reason for refusing, by construction, to extend words to them, which in their plain and common acceptation, do not reach them.

The only relief, to which it is suggested we are entitled, is by an application to the district judge, praying for a jury, under the 52d section of the bankrupt act, to enquire into the fairness of the commission, and if found fraudulent, to supersede it. With great deference to the opinions of those, by whom the practice of superseding commissions of bankruptcy, in virtue of this section, has been sanctioned, I may be permitted to question the correctness of such a procedure. After authorizing any creditor of a bankrupt to attend his examination, &c. before the district judge, and commissioners, examine witnesses, put interrogtaries, &c. that section proceeds thus : " And in case either the *bankrupt*, " or *creditor*, shall think him or herself aggrieved, by the " determination of the said judge, or commissioners, relative " to any material fact, in the commencement, or progress " of the said proceeding, or in the allowance of the certifi- " cate aforesaid, it shall and may be lawful, for *either* party " to petition the said judge, setting forth such facts, and the " determination thereon, with the complaint of the party, " and a prayer for trial by a jury, to determine the same. And " the said judge shall, *in his discretion*, make order thereon, " and award a *venire-facias*, &c. and judgment being enter- " ed on the verdict of the jury, shall be final on the said facts; " and the judge or commissioner shall *proceed* agreeably " thereto." I contend, that this section authorizes a jury to be impannelled to correct determinations made *under* the

1805.

BARSTOW
*v.*
ADAMS.

commission, not to set it aside. Whatever be the right here given to a *creditor*, the same right is given to the *bankrupt*. Can the bankrupt, in virtue of this section, petition to have the commission superseded? The whole bankrupt act proceeds upon the idea, that it is for the interest of the creditors to have the commission proceed; of the bankrupt to prevent it. It is considered as an adversary suit, in which the creditors are plaintiffs, and the bankrupt defendant. In the first stages of the proceedings, the creditors are all represented by the petitioning creditor. By the 3d section, provision is made for the bankrupt, to contest the facts alleged as the causes for the issuing the commission; and he is entitled to have a jury impannelled to enquire into the truth of those facts. And he shall not be declared a bankrupt unless, in the language of the act, " he is found to be " within the description of the act, and shall be convicted " of some one of the acts described in the first section." Suppose a man charged by a creditor with being a bankrupt, denies it, and has a jury impannelled under the 3d section, to try that question; and a verdict is found against him, and he is declared a bankrupt; can *he* afterwards, on petition under the 52d section, have the *same* facts re-examined by *another* jury? But the language of the 52d section is, " if *either* party is aggrieved, he may petition." Can then a *creditor* have the same facts re-examined by another jury? He, also, has been before a jury on this subject, either by himself, or petitioning creditor; and there may be verdict against verdict.

Besides, the 3d section further provides for the commission being *superseded*, within thirty days, on the application of a creditor. And is it not the height of absurdity, and will it not involve the worst of consequences, to permit the question, whether the commission fairly issued, to be examined before a jury, at any distance of time, after an estate has been fully settled? In such case, no persons would be safe ever to act under a commission, or purchase estate from assignees. Besides, the technical term *supersede* is no

where made use of in the 52d section : it is made use of only in the 3d section. Instead of this, by the 52d section the judge or commissioners are *to proceed agreeably thereto*—proceed to settle the estate of the bankrupt, conforming themselves to the determination of the jury, in the case, about which complaint was made.

This will make the system more consistent. Its language will be, "if you bankrupt, or you creditor, wish to set aside the commission, do it immediately, before expense is incurred, and property sold under it. If any erroneous decision shall be made, under the commission, in those cases which may affect your interest, apply under the 52d section, and have them corrected."

Further, the United States bankrupt act differs from the English in this, that by the 2d section of our act, the bond is to be taken by the judge *in the name and for the benefit of the bankrupt*. In England, the Lord Chancellor takes a bond in his own name, for the benefit of the party or parties grieved. Creditors have been decided to be parties grieved. (*v*) The condition of the bond is, that the creditor shall prove his debt in case the due issuing forth of the commission should be contested. Congress did not contemplate, that its due issuing forth, would be contested by any but the bankrupt. But if I am wrong in this construction of this section, and if the validity of the commission may be called in question under it ; who can do it ? The bankrupt, or a creditor : *no one else*. It furnishes no sort of relief to us ; unless, indeed, this broad construction of the term *debtor*, is to be extended to its correlative *creditor*, and made to include every body. And if it does, still all proceedings under this 52d section, are in the discretion of the district judge. And whether I shall have redress for my wrongs in a court of law, or even have them heard, is to depend on the *discretion* of a judge !

(*v*) 3 *East* 22, *Smithey* v. *Edmonson.*

N

In *Bagg's case* (*w*) a ground of the court of King's Bench assuming jurisdiction is, " *in order that no manner of wrong or injury, public or private, may be done, but may be remedied by due course of law.* I trust the citizens of Connecticut are not less sure in their possession, nor more remediless in respect of their wrongs, than the subjects of Great-Britain. We apply to courts for redress of our wrongs, as matter of *right*, not *favour*, and *demand* redress. Our property is not to be taken away " under *colour of authority*, unless clearly warranted by law."

In answer to all the arguments which have, or may be adduced, from the inconvenience of permitting the fairness of the commission to be examined by the common law courts, in suits brought by the assignees before those courts, I answer, that this will operate as another guard against fraudulent commissions, which have been abundant. Let creditors have known, that they must not only have a commission, which may be good only because no one will probably take the trouble to examine it, or which may satisfy the *discretion* of a district judge, but one which will bear the scrutiny of persons, whose estates are claimed from under their feet, by means of it ; and we should have witnessed less fraud in procuring commissions. As practised upon, bankrupts unblushingly talked of *taking benefit* of the act ; and applied to their creditors, or made creditors, to obtain their end. So far, therefore, from working mischief, the construction contended for will produce benefit.

I have attempted to shew, that assignees of a bankrupt's estate cannot maintain ejectment ; that the commission in this case was not founded upon a *legal* debt, but that it is fraudulent and void ; that fraud contaminates and nullifies the most solemn judgments of the highest courts ; that the district judge, when acting in relation to bankrupts' estates, under the bankrupt law, acts by *special* authority, and not as district court ; that neither *his* determinations, nor those of commissioners of bankruptcy, are to be received as judg-

(*w*) 11 *Rep.* 98.

ments ; that if judgments, they are not to be conclusive upon *strangers*, who could have no opportunity to question them ; that there is nothing in the general system of bankruptcy, from which this is to be inferred ; that the 56th section does not extend to any other persons than *debtors ;* that the defendants, in this case, and all others circumstanced like them, are exposed to lose their estates, legally acquired, if these proceedings are held conclusive on them, and are remediless, as they cannot apply under the bankrupt act to the district judge for redress. I therefore trust, that the judgment of the honourable Superior Court will be affirmed.

*R. Griswold,* in reply.

Two grounds have been assumed to maintain the judgment of the Superior Court. The first seems almost abandoned, by the counsel. And if the rights of the bankrupt are extinguished, and succeeded by those of the assignees, either the property must become the prey of trespassers, or the assignees, having the right of possession, must have a right to recover the possession.

The right of administrators to sustain actions for the real property of the intestate, in certain cases, has been lately contested ; though such suits were formerly maintained, upon this principle, that the interest vests in the heir, and the administrator acts only in trust. But in this case, if the assignees have not the right of action, no person has ; for the interest of the bankrupt is all divested by the bankrupt law, and by the assignment is vested in the assignees.

But, it is said, that the commission was irregularly issued. The Court will look to the *facts* stated in the plea, and not at the inferences, which the party may have attempted to draw from those facts ; and though they may say, that the commission was irregularly, unfairly obtained ; yet if the facts which they have set forth, in support of this, only tend

to shew, that the petitioning creditor's debt was not sufficient for him to pray out a commission, then the question, stripped of any pretence of fraud, is merely, Whether an inquiry will be made by our state courts, as to the amount of the debt upon which the district judge has issued a commission of bankruptcy? And this question is to be tried upon our own law, and ought to be viewed unembarrassed by British decisions.

The intention of our legislature was to make our law, in this respect, different from the English; to free our system from the embarrassments arising from different decisions of juries in every case, where the debtor of a bankrupt chose to contest the bankruptcy. This will appear from almost every section of the statute. The third section provides, that the bankrupt may demand a jury to try the fact of bankruptcy before the district judge. And did the legislature mean, that after this, that fact should be contested! By the 10th section, the assignment by the commission shall be effectual against the bankrupt, and all persons claiming under him. By the 34th section, the certificate shall be conclusive, unless unfairly obtained, or unless the bankrupt has secreted his estate. The bankrupt is discharged, although the fact was, that the debt of the petitioning creditor was less than $ 1000. Were it otherwise, the bankrupt might, by the decision of a jury, have been stripped of his property, and then be also deprived of the benefit of his certificate, without any fault of his own.

The 52d section provides for the calling of a jury by the bankrupt, or a creditor, either *at the commencement*, or *during the progress of the proceedings*. This then is the mode, and this the tribunal, constituted by our law, for the trial of any suit relative to their proceedings. But, if the same facts might also be contested at common law, then there would be no necessity to resort to the district judge.

The 56th section, it is admitted, varies our law from the

English in some respects. It must have been intended to effect the object mentioned. In principle, and almost in the words used, it prohibits a trespasser, as well as a debtor, from contesting the bankruptcy. A literal construction of the word *debtor* would extend to every person, who owes a duty to another. If compelled to submit to these proceedings, as a debtor, *a fortiori* he must be, as a trespasser. Courts will look at the spirit of the law ; and this is to be gathered from the whole of it. The object of this part of it was to enable the assignees, without unreasonable embarrassments, to collect the property of the bankrupts.

The words, " *duty*" and " *demand*," embrace actions of trover, trespass, and ejectment. The object is proper ; the principle is proper ; and the words are broad enough to reach those cases. The defence, therefore, is prohibited by that section.

But, it is contended, that that provision was not necessary ; it resulted from the general principle of this law. No violation of principle can arise, and no person, who has a claim to protection, can be prejudiced, by the construction contended for. Purchasers, it is said, may suffer. But the 10th section provides for a *bona fide* purchaser having no notice. Honest purchasers, therefore, cannot complain ; and the law was not designed (whatever may have been its operation) for *knaves*.

Admitting that the defendants could not have contested the judgment of the commissioners, or judge ; there are many cases, where parties are concluded by judgments, to which they were not privy : as in the cases mentioned of attaching creditors, and of aliens. So, if an executor brings a suit, and the will has been proved, the debtor cannot claim that the plaintiff is not executor, because the testator was of unsound mind, although he never had an opportunity to be heard upon that question before the court of probate. And it is a sound principle, that where the

1805.

BARSTOW
v.
ADAMS.

contest respects the right of property, as in actions of trover, it vests the property, as against all persons; though it may be otherwise in actions merely possessory. The bankrupt system, therefore, secures the rights of third persons, as well as the principles of the common law.

Unembarrassed by British authorities, it would be impossible to doubt; and surely the Court ought not to be entangled by that system, where there appears to be an intention to depart from it. Trace that system from its origin, it will be found very different from ours. The statute of *Hen.* VIII. merely authorized the commissioners, in an *ex parte* manner, to retain the person and property of the bankrupt. He was not thereby discharged from his debts; nor was he admitted to contest their proceedings. They have since, by degrees, introduced a system similar to ours; but their decisions, made in the infancy of their system, have become an excrescence, which they cannot now lop off. But are we to adopt their system, which has been gradually maturing, in its most perfect state; or with all the imperfections, which have grown up with its growth!

Our law varies from the British, in the 3d, 52d and 56th sections. And these variations were made to prevent the decisions of those persons, whom Lord KENYON calls a court of justice, from being impaired except in the manner there pointed out. These variations, intended to make our law more perfect, must, of course, produce different decisions upon these parts of the law.

It is, therefore, believed, that our courts will not assume that authority, which was intended to be vested in another tribunal.

BY THE COURT, The judgment was reversed, ALLEN and EDMOND, *Assts.* dissenting.

The objections to the plaintiffs' recovery are, that an action of ejectment cannot be sustained by the assignees of a

bankrupt ; and that the commission was not warranted, by the debt of the petitioning creditor.

1. By the act to establish an uniform system of bankruptcy it is provided, that the commissioners shall take into their possession, " all the estate, real and personal, *of every* " *nature and description*, to which the bankrupt may be en- " titled," and that they shall assign it " to such persons as " the creditors shall choose" their assignees. This assignment by the commissioners, it is enacted, " shall be good at " law or in equity against the bankrupt and all persons claim- " ing under him," after he shall have committed the act of bankruptcy, upon which the petition issued, except as against *bona fide* purchasers for valuable consideration, and without notice. The 50th section of the bankrupt act provides, " That if any estate real or personal shall de- " scend, revert to, or become vested in any person, after he " shall be declared a bankrupt, and before he or she shall ob- " tain a certificate, signed by the judge as aforesaid, all such " estate shall, by virtue of this act, be vested in the said " commissioners, and shall be by them assigned and convey- " ed to the assignee or assignees, in *fee simple*, or otherwise, " *in like manner as above directed* with the estate of the said " bankrupt, at the time of the bankruptcy."

From the recited clauses of the bankrupt law, it is unquestionable, that after the execution of the deed of assignment, the bankrupt is entirely divested of his property, and the same is vested in his assignees. The expressions of the 50th section, in the most explicit manner, evince, that *the whole estate* is conveyed by the deed of the commissioners, and that there is no residuary interest in the bankrupt.

It results as a necessary legal consequence, that the assignees of a bankrupt *may*, and that they alone *can*, maintain ejectment. Theirs is the title ; to them the real estate

1805.

BARSTOW
*v.*
ADAMS.

of the bankrupt exclusively belongs ; and in the event of an ejectment, they are the persons dispossessed and injured.

By the English laws relative to bankruptcy, correspondent rights are given to the assignees of a bankrupt ; and in Westminster-Hall, it uniformly has been determined, that they may maintain actions of ejectment. (*x*)

2. The remaining objection to the plaintiffs' recovery is, that the commission was not warranted, by the debt of the petitioning creditor.

The direct determination of this objection is both unnecessary and improper, as the validity of a commission may not collaterally be drawn in question. The act of the United States regarding bankruptcy, has designated the only way, in which this may be done, that is, by direct application to the judge who issued it.

In this view of the subject, it is useless to investigate, on what principle, the courts of Westminster-Hall, admit the invalidation of commissions of bankruptcy, by a collateral inquiry. (*y*) It probably would be found, that this practice originated from the slender authority formerly given to commissioners of bankrupt, and become settled, long before they were considered as possessing judiciary powers. But in this country, the act concerning bankruptcy came into existence, after long experience had ascertained the excellencies and defects of the English system ; and is not a *servile* copy of their laws, but a *departure* from them, in many particulars.

It is a first principle, that the act concerning bankruptcy should be uniform in its operation. By the 8th section of the constitution, Congress was empowered, to establish " *uniform* laws on the subject of bankruptcies, *throughout*

(*x*) '*Esp. Dig.* 437.　2 *H. Bla.* 444, *Smith* v. *Coffin.*
(*y*) *Doug.* 205.　*Cullen* 412.

" the United States ;" and the title of the act evinces, that *uniformity* was an intended object of the law. To preserve this object, it was obviously requisite, that the proceedings under the bankrupt act, should be exclusively confined to the courts of the United States. In vain might uniformity of operation be expected, if the execution of the law had been confided to the uncommunicating judiciaries of the respective states. Hence the reason was cogent, for vesting the district judge with exclusive jurisdiction, under the bankrupt act.

In the construction of the law, this principle of *uniformity* in the system of bankruptcy, must not be out of sight ; for " such construction ought to be put on a statute, as may " best answer the intention the makers had in view." (z)

By the 56th section of the act, it is provided, " That in " all cases where the assignees shall prosecute *any debtor* of " the bankrupt, for any *debt*, *duty*, *or demand*, the com- " mission, or a certified copy thereof, and the assignment " of the commissioners of the bankrupt's estate, shall be " *conclusive evidence*, of the *issuing of the commission, and* " *of the person named therein being a trader and bankrupt,* " *at the time mentioned therein.*"

This section renders it indisputably clear, that in suits brought by the assignees against *any debtor* of the bankrupt, the validity of the commission cannot be questioned. The commission itself is not only evidence, but taken in connexion with the deed of assignment by the commissioners, *conclusive evidence*, of its having legally issued, and that the person named therein is a bankrupt. (a)

It was contended, that this section of the law related merely to actions on contract, brought against *the technical*

(z) 11 *Rep.* 73.
(a) 1 *'Esp. Rep.* 43.

O

*debtor ;* but this is an exposition of it much too narrow. If the literal meaning of the statute were the genuine and only intendment of it, it would not be unreasonable, in furtherance of the intent of the legislature, collectible from the context, to assert, that *by debtor* is to be understood, any person against whom *a demand* exists in favour of the assignees of a bankrupt. This construction renders the word, by which the person sued is designated, co-extensive with the words denoting the subject matter of the suit spoken of in the same section, that is, " debt, duty or *demand* ;" but the restricted interpretation contended for, annihilates the word " *demand*," and violates the well known rule, " that a statute " ought to be so construed, that, if it can be prevented, no " clause, sentence, or *word*, shall be superfluous, void, or " insignificant." (*b*)  This construction is corroborated and justified, by its conformity to the spirit and manifest general intent of the act, and is indispensible for the preservation of *that uniformity,* which is an essential feature of the law.

But the restricted interpretation contended for, is pregnant with this manifest absurdity ; that the legislature has required of the assignee more proof, as against a trespasser, than would be necessary in a suit on contract : Or, to place the absurdity in a more glaring light, *a trespasser* is rewarded with a privilege, which is denied to the defendant in an action of assumpsit.

The 52d section of the act confirms the construction, which has already been given. It provides, that " in case " either the bankrupt or creditor shall think him or herself " aggrieved by the determination of the said judge or com- " missioners, relative to any material fact in the commence- " ment or progress of the said proceedings, or in the allow- " ance of the certificate aforesaid, it shall and may be law- " ful for either party to petition the said judge, setting forth " such facts and the determination thereon, with the com-

(*b*) 1 *Show.* 108.   *Hard.* 344.

" plaint, of the party and a prayer for trial by a jury to deter-
" mine the same ; and the said judge shall in his discretion
" make order thereon, and award a *venire-facias* to the mar-
" shall of the district, returnable within fifteen days, before
" him, for the trial of the facts mentioned in the said petition,
" notice whereof shall be given to the commissioners and
" creditors concerned in the same : at which time the said
" trial shall be had, unless on good cause shewn, the judge
" shall give further time, and judgment being entered on
" verdict of the jury, shall *be final on the said facts*, and the
" judge or commissioners shall proceed agreeably thereto."

This section designates the mode, in which all the pro-
ceedings, from the commencement to the termination of a
bankruptcy, may be revised, and the facts relative to it, *con-
clusively settled.* It has made the verdict of a jury, *ex di-
recto* passing upon the complaint of bankrupt or creditor,
*final.* A provision like this, is wisely calculated to preserve
uniformity in the bankrupt system, and supersedes the ne-
cessity of any collateral inquiry relative to subjects, which
may be better settled, by a direct investigation of them. It
falls in entirely with the construction put on the 56th sec-
tion, which, indeed, makes it a necessary provision.

Other sections in the act might be cited, to corroborate
the exposition given, particularly the 3d ; but a further eluci-
dation of the point is needless.

It has been said, that the 52d section of the act relates to
the bankrupt and *his creditors* only, and that it may not
without injustice be deemed to conclude those, who are not
creditors, and who have not the right of trial, except in the
course of the common law. The observation in this case,
if it had force, would be inefficacious, as the defendants are,
not merely trespassers, but *creditors*. The principle, how-
ever, implied in it, is as groundless, as it is inapplicable.

It is not true, even at common law, that the proceedings

1805.

BARSTOW
v.
ADAMS.

of every forum are inconclusive, unless as between the parties. (c) But a discussion of this subject, with its limitations and exceptions, would reflect little light on the present inquiry.

The sole objection to the construction given to the 52d section, rests upon the supposed *justice* of a legal provision for a trespasser, to contest the validity of the commission. Why should this provision have been made? What interest can such a person have, in the settlement of this question?

The act concerning bankruptcy was passed, not to privilege tort-feazers, but for the benefit of the bankrupt and his creditors. If they acquiesce in the commission, and the proceedings under it, is it matter of surprize, that the legislature should not have instituted a tribunal, for the investigation of this subject, in favour of trespassers!

On the whole, the construction put upon the act of bankruptcy, is founded in the highest convenience, and is necessary to preserve the symmetry and uniformity of the system. It deprives no person, who ought to possess the right, of review of the proceedings of the judge and commissioners, in the most unexceptionable mode, that is, by *direct* trial by jury. It prevents the collateral litigation of questions, equally unnecessary and vexatious. And it provides for the carrying into operation the bankrupt act, free from those impediments, which the policy of some jurisdictions might render fatal.

(c) *Atk.* 151, *Ex parte Wilson.* 1 *Salk.* 290, *Blackham's case.* *Bul. Ni. Pri.* 245. *'Esp. Dig.* 760. 4 *Co.* 29.