BETTS *against* LOCKWOOD and others.

The "*fair character*," which a petitioner for the benefit of the insolvent act must sustain, in order to entitle him to a decree in his favour, is his general character, depending upon his habits of life or a course of conduct.

*His not being justly chargeable with mismanagement in his business,* refers to his habits or a course of conduct in his business, and imports something more than a single instance of immoral conduct, even although it might lead to a pecuniary loss.

Therefore, where the petitioner having made out a *prima facie* case, the respondent proved, by the record, that he had previously recovered a judgment against the petitioner, in an action for seducing his, the respondent's, daughter ; it was held, that this was not sufficient to preclude the petitioner from the benefit of the act.

*Qu.* Whether evidence of particular facts, is admissible, to shew the character of the petitioner.

An insolvent debtor, who has obtained the benefit of the act, is protected against a judgment debt founded on a tort.

THIS was a petition for the benefit of the insolvent **act,** brought by *Philer Betts* against his creditors. At the term of the superior court, in *September,* 1830, the petitioner and *Edmund Lockwood,* one of the respondents, appeared and were fully heard. The other respondents suffered a default.

It was shown, in evidence, that the only debt due from the petitioner to *Lockwood,* was that upon which the petitioner was then confined in prison, which arose upon a judgment in a suit brought by *Lockwood* against him for seducing *Lockwood's* daughter ; (*a*) and that the debts due to two other respondents arose for fees due them as counsel in defending the petitioner in that suit. Upon these facts, *Lockwood* claimed, that the petitioner was not entitled to the relief sought, especially as against him. The court granted the petition ; **and** *Lockwood* thereupon moved for a new trial.

*Hawley,* in support of the motion, contended, That the petitioner was not entitled to the benefit of the act.

1. On account of his character. The statute was intended to protect the honest, industrious and virtuous, but unfortunate; not to provide relief for trespassers and seducers.

2. On account of his misconduct, which resulted in insolvency,

(*a*) Vide *Lockwood* v. *Betts*, ante 130.

*Fairfield,*
June, 1831.

Betts
*v.*
Lockwood.

as its natural consequence.   He became insolvent, in a way the reverse of that contemplated by the statute.

3. On account of the nature of *Lockwood's* claim, being founded not on a *contract,* but on a *tort.*   First, the proceedings would furnish no protection in case of a claim sounding in tort.   *Kennedy* v. *Strong,* 10 *Johns. Rep.* 289.   *Parker* v. *Norton,* 6 *Term Rep.* 695.   *Martins* v. *Ballard, Bee's Adm. Rep.* 258.   Secondly, that which will not protect as against the original claim, will not as against a judgment recovered upon it.   *Watson* v. *Bourne,* 10 *Mass. Rep.* 337.   *Wendell's* case, 19 *Johns. Rep.* 163.   *Strong* v. *White,* 9 *Johns. Rep.* 161.   *Wyman* v. *Mitchell,* 1 *Cowen* 316.

*Betts,* contra, was stopped by the Court.

WILLIAMS, J.   The respondent, *Lockwood,* claims, that as against him, the petitioner was not entitled to relief: that the statute was intended for the relief of honest, industrious persons, who possess a good character, and who have become indebted by *contracts,* and not by *misconduct.*

The statute enacts, that if it shall appear, that the petitioner had a fair character for probity and industry, and is not justly chargeable with idleness or mismanagement in his or her affairs, and has become insolvent, and has not conveyed any of his estate to defraud his or her creditors, he shall be deemed and adjudged an insolvent debtor.   *Stat.* 282, 3. *tit.* 52. *s.* 1.

It is not denied, that the petitioner has brought himself within this statute, unless the facts proved to subject him in *Lockwood's* suit, prevent.

It is claimed, first, that the facts proved on that trial, shew, that the petitioner's character for probity, is not good.   The statute, it is to be remarked, speaks of his *character ;* by which I understand his general character ; and that must depend upon his habits of life, or a course of conduct ; and a single instance of misconduct is not to determine it,—unless perhaps in case of the *crimen falsi.*   And although an offence like this is one which I am neither disposed to palliate nor overlook, yet I am not prepared to say, that it so affects the reputation of a man, that his general character is destroyed.   How far his character will be injured, must depend upon circumstances.   They may have been so aggravated as totally to destroy his character ; and on the other hand, there may have been many circumstances of alleviation in the case.   Here, we have no-

thing to weaken the evidence of good general character, which must have been produced at the trial, except the bare fact, which the record presents.

I have considered this testimony as if it was properly before the court; but had it been objected to, it seems to me, that it could not have been admitted at all. The enquiry is a general one as to character; and in such cases, the rule is universal, that the witness is not allowed to go into evidence of *particular facts* tending to shew what the character is. Thus, when the question arises as to the character of a witness for truth, particular instances of falsehood cannot be proved. So in actions of slander, where the general character is in issue, specific acts of misconduct, except in relation to the particular offence charged, are not admissible to prove that the plaintiff is worthy of no damages. For if such proof were admissible, the party could not ordinarily be prepared to rebut it, unless he came prepared to vindicate every action of his life. The enquiry would be almost endless; and distinct issues must be framed as to every distinct transaction, which might be called in question. On the other hand, if character might be attacked, by separate instances of misconduct, it would seem as if it might be supported, by particular instances of good conduct. Such enquiries would be almost interminable in their progress, and generally unsatisfactory in their result.

To the objection that the petitioner has been guilty of misconduct in his affairs, a similar answer may be given. The misconduct spoken of in the statute, is idleness or mismanagement of his affairs. It refers to his habits, his course of conduct in his business, and cannot, unless in some very extraordinary case, apply to a single instance of immoral conduct, even although it might lead to pecuniary loss. This branch of the statute contemplates mismanagement in business, neglecting it through idleness, or wasting his property by profusion, or managing it in such a manner as to shew an utter disregard of the rights of those who may have an interest in it.

It is also objected, that the claim of *Lockwood* is founded on a *tort;* and, therefore, is not to be affected by this statute; and cases from the state of *New-York* are cited. Those cases must depend upon the peculiar phraseology of their insolvent laws. Thus, in *Strong* v. *White,* 9 *Johns. Rep.* 161. it was holden, that a person committed on an execution for a libel, was not within the act; the words of the act being " impris-

*Fairfield,*
June, 1831.

Betts
*v.*
Lockwood.

oned on any civil process out of any court, &c. or prosecuted in any such court for *debt,* or *on contract,* express or implied ;" and that an action for a libel is not for a debt, or on a contract, express or implied, within the meaning of the act. It has also been holden, in *New-York,* that a judgment is, in no sense, a contract. *Wyman* v. *Mitchell,* 1 *Cowen* 316. But in *England,* it has been adjudged, that where the defendant in an action of slander, became bankrupt between the verdict and judgment, and afterwards obtained his certificate, there was no distinction between a tort and a contract where judgment follows the verdict, and that he was entitled to the benefit of his certificate. *Longford* v. *Ellis,* 1 *H. Bla.* 29. n.

The extent, therefore, of the discharge, must depend entirely upon the words of the statute, under which it is granted. Our statute contains no restrictive words like that of *New-York,* but is for the benefit of *debtors ;* and the party is to be adjudged an insolvent debtor ; and is to be protected from arrest and imprisonment for or on account of any debt or demand due or owing.

The only question, therefore, now to be determined, is, whether this claim of *Lockwood,* when ascertained by a verdict and judgment, is a debt';—in other words, whether a judgment debt is a debt due or owing ; and it would seem as if the bare statement of the question conveyed the answer.

Is not *Betts* a debtor within that section of the act concerning gaols, which enacts, that " prisoners for debt shall not be lodged in the same room with criminals ?" *Stat.* 253. *tit.* 42. *s.* 12. Is he not a debtor within that section of the same act, which provides, that the sheriff may commit to close prison any debtor, who voluntarily departs from the prison limits ? *P.* 252. *s.* 8. Is he not a debtor within our statute of foreign attachments? Will not an action of debt lie on this judgment as for a debt due and owing ; and is it any answer, that it was originally founded on a tort ? Although the word debtor may not here be used in that enlarged sense it is in the bankrupt laws, according to the opinion of the court in *Barstow* v. *Adams,* 2 *Day* 98. yet I see no foundation for saying, that *Lockwood's* claim is not a debt, and that *Betts* is not an insolvent debtor ; and therefore entitled to the benefit of the insolvent act.

There is, therefore, no ground for a new trial.

The other Judges were of the same opinion, except PETERS, J., who was absent when the case was argued.

New trial not to be granted.