## STATE OF OREGON, RESPONDENT, *v.* THOMAS GARRAND, APPELLANT.

EVIDENCE—DEFENDANT'S CHARACTER MAY BE INQUIRED INTO, WHEN—PARTICULAR FACTS NOT ADMISSIBLE.—The question of character is one which the defendant alone has a right to enter into; and when he has done so, the prosecution, in rebuttal, is permitted to show only his general bad character. Proof of particular facts is inadmissible.

APPEAL from Marion County.

Thomas Garrand was indicted by the grand jury of Marion County, on June 10, 1874, for the crime of murder in the first degree, in killing one Thomas J. Hubbard, on April 12, 1874. He was tried and convicted, and on June 17 was sentenced to be hanged August 14, 1874. An appeal was taken to this Court, and the Governor reprieved the defendant until October 2, 1874. The bill of exceptions exhibits the errors complained of. After the defendant had rested his case, the State, to sustain the issues on its part, and as rebutting evidence to the testimony of good character introduced by the defendant, called W. S. Barker, and asked him the following question: "State what you know, if anything, of the prisoner's behavior while under your charge as jailer of the county jail of Marion County, charged with the murder of Thomas J. Hubbard." The defendant's counsel objected, on the ground of immateriality and incompetency. The objection was overruled, the defendant's counsel excepted, and the witness, being allowed to testify, stated that while the defendant was under his charge, as jailer of the county jail of Marion County, he

attempted to escape, and, by breaking off two locks from the jail-doors with an axe, he had succeeded in getting outside the jail, and some distance away, before he was overtaken and brought back. The State then called on one Benjamin Blantain, and asked him the following question: "State what you know, if anything, of the defendant's conduct while in custody in the county jail of Marion County, for the alleged killing of Thomas J. Hubbard." The defendant's counsel objected, on the ground of immateriality and incompetency. The objection was overruled, the defendant's counsel excepted, and the witness, being allowed to testify, stated that he was a fellow-prisoner with the defendant from the time he was arrested; that the defendant had, at one time, attempted to escape, and had broken the locks off the jail for that purpose; and that, at another time, the defendant told him (B.) that he was going to kill the jailer by hitting him over the head with a stick of wood; that he would kill him when he got a good opportunity, and that he would then escape.

After the evidence in the case was all in, counsel for the defendant requested the court to instruct the jury as follows: "If you have a reasonable doubt as to whether, under proper treatment, Hubbard might not have recovered, you cannot find the defendant guilty." Which instruction the court refused to give, and defendant, by his counsel, duly excepted.

*Mallory & Shaw and John M. Gearin,* for Appellant.

*J. J. Whitney, District Attorney; J. J. Murphy and Boise & Willis,* for Respondent.


By the Court, McARTHUR, J.:

It is well settled that in all criminal prosecutions the prisoner will be allowed to call witnesses to speak generally as to his character, and it is equally well settled that the prosecution cannot in rebuttal enter into particular facts to show the general bad character of the defendant. Roscoe (Crim. Ev. 98) says that the prosecutor cannot

enter into evidence of the defendant's bad character, unless the latter enable him to do so by calling witnesses in support of his good character, and even then the prosecutor cannot examine as to particular facts. Phillips (1 Ev. 765) says evidence will not be admitted, on the part of the prosecution, to show the bad character of the accused person, unless he has called witnesses in support of his character, and even then the prosecutor cannot examine as to particular facts, the general character of the accused not being put in issue, but coming in collaterally. And again (1 Phil. Ev. 764), it is laid down that the inquiry must also be as to the general character, for it is general character alone which can afford any test of general conduct, or raise a presumption that the person who had maintained a fair reputation, down to a certain period, would not then begin to act a dishonest, unworthy part. Proof of particular transactions in which the defendant may have been concerned is not admissible as evidence of his general good character. Nor, in reply to such evidence. (8 Conn. 487, 488.) Chitty (1 Crim. Law, 575) says that evidence of character is more frequently called on behalf of the defendant, and in doubtful cases will often influence the jury to an acquittal. And even where the defendant thus opens the discussion, the prosecutor can ask no question as to particular facts, but must confine himself simply to general reputation and character.

In the argument it was contended by respondent's counsel that, as the facts testified to by Barker and Blantain tended to support the issues, on the part of the State, they were properly admitted. To maintain this proposition an exceedingly artificial construction of the bill of exceptions was resorted to. The bill sets forth that "the State, after the defendant had rested his case, and to sustain the issues on its part," etc. From this language we are asked to draw the deduction that the evidence was offered at that stage of the trial when testimony of an escape, or attempt to escape, was admissible, or the deduction that after the defendant had rested his case, the court, having control over the

order of proof (Code, § 820), in the exercise of its discretion admitted the testimony.

If language has any force at all, that used in the bill of exceptions must convince the most cursory reader that the particular testimony objected to was admitted, not only after the defendant had rested his case, but as *rebutting evidence* to the testimony which the defendant had offered of his general good character. The premises being false, both the deductions are illogical and fallacious.

As a general rule, testimony in relation to attempted escape is admissible to show consciousness of guilt. (1 Wharton's C. L., § 714.) It should be offered at the proper time, and before the prosecution rests its case. Then the prisoner is not taken by surprise, and is afforded an opportunity to submit testimony overcoming or qualifying that of the State. Such testimony should not have been admitted under cover of rebutting testimony of general good character, and at that stage of the trial when the defendant could no longer be heard through his witnesses.

We think the admission of the testimony of Barker and Blantain, as set out in the bill of exceptions, was error.

Appellant's counsel made a point in the argument to which allusion seems necessary. It was contended that on the trial of a defendant charged with one crime, testimony is not admissible to show that he was engaged in plans for the commission of other crimes. This position *seems* well sustained by the authorities referred to. It cannot, however, apply in this case. The latter part of the answer of Blantain, as set forth in the bill of exceptions, was not responsive to the question asked. It was a voluntary statement and apparently unsought. It was the duty of counsel to have asked the court to withdraw it from the jury. Nothing of the kind was done. It cannot, therefore, be treated as error by this Court.

As to the instruction which was offered and refused, we think there was no error in its refusal. In cases of homicide, where the wound is the immediate cause of the death, it is no defense that the deceased might have recovered if

greater care or skill had been shown in his treatment. (1 Wharton's C. L., § 941.)

It follows, from the views of this Court upon the question first discussed, that the judgment of the court below should be reversed, and a new trial granted.

Judgment reversed.