JOSHUA H. WARD *vs.* SOLON JENKINS & others.

An assignee of a bankrupt, under the United States bankrupt act of 1841, may maintain an action in his own name, in a state court, for the breach of a covenant made with the bankrupt.

THIS was an action of covenant broken, brought by the assignee of Thomas Cushing, a bankrupt, on a covenant made by the defendants with said Cushing, on the 21st of August 1835. The defendants moved the court to quash the writ and declaration, "because it appears by the said writ and declaration that the said Joshua H. Ward brings this suit as assignee, under the late bankrupt law of the United States, of Thomas Cushing, a bankrupt, upon a covenant alleged to have been made by said defendants to said Cushing, before his bankruptcy; and that such a suit is only cognizable by the circuit and district courts of the United States "

*Fletcher & Sewall,* in support of the motion. By the con stitution of the United States, art. 1, § 8, and art. 3, §§ 1, 2, congress has power to pass uniform laws on the subject of bankruptcies throughout the United States; and the judicial power of the United States is vested in one supreme court, and such inferior courts as congress may, from time to time, order and establish, and extends to all cases in law and equity, arising under the constitution and laws of the United States. The bankrupt law of 1841, under which the plaintiff was ap- pointed assignee, confines him, in the institution of actions, as such, to the courts of the United States. Section 3 author- izes an assignee, who shall be "appointed by the proper court," (that is, a court of the United States,) to sue and defend, "subject to the orders and directions of *such court.*" Section 6 enacts that "the district court in every district shall have jurisdiction in all matters and proceedings in bankruptcy arising under this act, and any other act which may hereafter be passed on the subject of bankruptcy; the said jurisdiction to be exercised summarily, in the nature of summary pro- ceedings in equity;" and this jurisdiction is declared to "extend to all matters and things to be done under and in virtue of the bankruptcy." This jurisdiction was intended to be exclusive; so that the business may be summarily set- tled in the United States courts. Section 8 gives concurrent jurisdiction to the circuit and district courts, and limits the commencement of all suits, touching the property and rights of property of the bankrupt, to two years after the decree of bankruptcy, or the accruing of the cause of action. This limitation, to be effective, must confine suits to the United States courts. In *Ex parte Christy,* 3 How. 312, 321, Story, J. says, "the obvious design of the bankrupt act of 1841 was to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period. For this purpose it was indispensable that an entire system, ade- quate to that end, should be provided by congress, capable of being worked out through the instrumentality of its own courts, independently of all aid and assistance from any other tribu-

nals over which it could exercise no effectual control." See also *Mitchell* v. *Great Works Milling & Manuf. Co.* 2 Story R. 655–661.

Congress cannot confer on the state courts jurisdiction of an action, the right to which is created by a law of the United States. 3 Story on Const. U. S. §§ 1742–1749. See also 1 Kent Com. (3d ed.) 395–403. *Martin* v. *Hunter,* 1 Wheat. 330. *Houston* v. *Moore,* 5 Wheat. 27, 49. *Parsons* v. *Barnard,* 7 Johns. 144.

An assignee of a foreign bankrupt cannot sue in his own name, in a state court, on a demand not negotiable ; but must sue, if at all, in the name of the bankrupt. *Byrne* v. *Walker,* 7 S. & R. 483. *Blane* v. *Drummond,* 1 Brock. 62. *Estate of Merrick,* 2 Ashm. 485. An assignee of a bankrupt here can have no greater power. If he can sue at all, it must be in the bankrupt's name. It is a general principle, that a chose in action cannot be sued in the name of an assignee.

*G. Minot,* for the plaintiff. 1. The 3d section of the bankrupt act authorizes assignees to sue and defend as fully, to all intents and purposes, as the bankrupt himself might. In 2 Story R. 656, Story, J. says, congress has no right to *require* the state courts to entertain suits for the objects and purposes of the bankrupt act ; and that the states *have a right to restrict* the judicial functions and jurisdiction of their courts, and refuse to allow suits to be brought there, arising under the laws of the United States. He does not say that the state courts have no jurisdiction of such suits, but the contrary is implied in what he does say. Foreign corporations may sue in the state courts. 1 U. S. Digest, Corporation, xii.

2. Considering the bankrupt act as a foreign law, the plaintiff could not sue in his own name. Story's Conflict of Laws, § 565. *Orr* v. *Amory,* 11 Mass. 25. But that act is not a foreign law ; and all the parties to this action are citizens of this State and of the United States, and are bound by the laws of congress. The present is a question of right.

and not of remedy, and the plaintiff, by the bankrupt **act,** has a right to sue in his own name. 9 Amer. Jurist, 42. *Lombard Bank* v. *Thorp*, 6 Cow. 46. *Alivon* v. *Furnival*, 1 Crompt. Mees. & Rosc. 277, and 4 Tyrw. 751. *Carnegie* v. *Morrison*, 2 Met. 381. Under the bankrupt act of 1800, an assignee was allowed to sue in his own name on demands not negotiable. *Brown* v. *Cuming*, 2 Caines, 33. *M'Menomy* v. *Ferrers*, 3 Johns. 71. *Kelly* v. *Holdship*, 1 Browne, 36. See also *Cornwell's Appeal*, 7 Watts & Serg. 305.

3. Congress have authority to give jurisdiction to the state courts to entertain suits brought by assignees of bankrupts. This court so held, in *Day* v. *Laflin*, 6 Met. 280.

DEWEY, J. The question raised in the present case is, whether the assignee of a bankrupt under the United States bankrupt law of 1841, *c.* 9, can maintain an action in the state courts of Massachusetts, in his own name, as such assignee, upon a contract under seal, made by the defendants with the bankrupt before his bankruptcy. The defendants insist that such action cannot be maintained; and this position they attempt to support upon two grounds. 1st. Upon general principles of constitutional law applicable to the jurisdiction of state courts in matters arising under statutes enacted by the congress of the United States. 2d. Upon the effect to be given to the various provisions of the bankrupt act itself, which, it is contended, confers exclusive jurisdiction, of all suits, in relation to the property and debts of the bankrupt, upon the courts of the United States.

1. The first of these positions, it will be readily seen, opens a wide field for investigation, and upon a point as to which there has been some diversity of views; the question of the respective jurisdictions of the state and national tribunals being one not always free from difficulty and doubt.

It was early suggested, that under the provisions of the constitution of the United States, art. 3, providing "that the judicial power of the United States shall be vested in one supreme court, and in such inferior courts as the congress may from time to time order and establish," an exclusive jurisdic-

tion, in all matters arising under the laws of the United States, would be assumed by the courts of the United States, to the manifest inconvenience of the citizens, and in derogation of the rights of sovereignty of the individual States. But, in opposition to this, the advocates of the constitution declared that in every case in which the state courts were not expressly excluded by the acts of the national legislature, those courts "will take cognizance of the causes to which those acts may give birth. The judiciary power of every government looks beyond its own local or municipal laws, and in civil cases lays hold of all subjects of litigation between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant part of the globe." Federalist, No. 82.

Practically, it was soon found that the course of legislation by congress was sufficiently liberal in the matter of jurisdiction of the state courts; for, in many instances, direct enactments were made, authorizing not only civil actions, in certain cases arising under the laws of the United States, to be instituted in the state courts, but also conferring upon those courts, to some extent, a concurrent jurisdiction in the matter of crimes and offences arising wholly under the laws of the United States. A somewhat latitudinarian construction prevailed as to the extent of jurisdiction of the state courts, in the early period following the adoption of the constitution of the United States. The statutes of congress conferring upon the state courts the authority to take cognizance of criminal offences punishable only under such statutes, to sustain actions *qui tam* to recover penalties and forfeitures solely accruing under United States legislation, and others of like character, have, in later periods, been generally deemed unauthorized enactments. *United States* v. *Lathrop*, 17 Johns. 4. But actions upon contracts or bonds executed in reference to some duty or liability arising under a statute of the United States, and creating debts or obligations differing in no other respect from those within the ordinary state jurisdiction, have been directly sanctioned by judicial decisions. *United States* v. *Dodge*, 14 Johns. 95.

The jurisdiction assumed by the state courts, in matters arising under the United States laws, has not been limited to the case where jurisdiction has been expressly conferred upon them by the statute itself. Independently of any such source of authority given them in direct terms, it seems to have been always maintained, that where there was not in the constitution, or the statute itself, a limitation or restriction confining the jurisdiction to the United States courts, and thus excluding state jurisdiction, the fact that the cause of action arose under certain rights acquired by a statute of the United States was no sufficient objection to the jurisdiction of a state court. The practice, under the earlier bankrupt law, (*St.* of April 4th 1800,) of instituting actions in the state courts, by assignees appointed under the provisions of that law, was very general; but I have searched in vain for any case where the right to institute such actions was controverted or denied. Cases of this character are found in *Brown* v. *Cuming*, 2 Caines, 33; *Barstow* v. *Adams*, 2 Day, 70; *Assignees of Barclay* v. *Carson*, 2 Hayw. 243; *Kelly* v. *Holdship*, 1 Browne, 36; and *Sullivan* v. *Bridge*, 1 Mass. 511. These cases were strongly contested, and some of them by eminent counsel. Though contested on the point of the right of the assignee to institute a suit, the objection relied upon was one arising from the nature of the claim in the particular case. The broader ground, that an assignee of a bankrupt could in no case maintain an action in a state court, was not suggested, though equally fatal to the action, if the position be now well taken.

I apprehend that the able and learned commentaries of Chancellor Kent and Mr. Justice Story, in which this question of state jurisdiction in matters arising under the United States laws is considered, will furnish no authority for sustaining the position that the state courts can exercise no jurisdiction in matters arising under the provisions of a statute of the United States. On the contrary, Mr. Justice Story, 3 Const. U. S. § 1749 says, " congress may indeed permit the state courts to exercise a concurrent jurisdiction in many cases;

but those courts then derive no authority from congress over the subject matter, but are simply left to the exercise of such jurisdiction as is conferred on them by the state constitution and laws." Chancellor Kent (1 Com. 3d ed. 397,) says, "state courts may, in the exercise of their ordinary, original and rightful jurisdiction, incidentally take cognizance of cases arising under the constitution, the laws and treaties of the United States." And this, I suppose, is the true principle upon which the jurisdiction is in such cases exercised; not upon the ground of a judicial authority conferred, as such, by a law of the United States, but as the ordinary jurisdiction of the state court; acting indeed, in the particular case, upon legal rights which may have been created, or materially affected by the legislation of congress. The state courts are to give force and effect to a law of congress, as the supreme law of the land. It is the law of Massachusetts; as much so as a statute enacted by her own legislature; deriving its vitality from another source, but of equal and it may be of paramount authority.

These views furnish the answer to the argument for the defendants, drawn from the course of decisions which have so generally, but not universally, been made in the state courts, denying the authority of assignees of a bankrupt, under a foreign bankruptcy, to maintain actions in the state courts, in their names, and in their capacity of assignees. Those were cases of assignees created as such solely by foreign governments, and by force of laws not operative in the States composing our Union. To have permitted actions to be instituted by such assignees would probably have required the giving of full force and effect to the assignment in bankruptcy, on transferring the property of the bankrupt that might be within our jurisdiction, to the prejudice of the interests of creditors living in this Commonwealth, probably upon much the same principle and for the same reason that we refuse to sustain actions in the name of administrators or executors appointed by the authority and under the laws of other States; namely, that we may not aid in the with-

drawal of assets from our own jurisdiction, without **first** securing the proper distribution among our domestic creditors. But we stop here. We give full force and effect to the laws of other States creating bodies corporate, and investing certain individuals with power to sue in a corporate name. Nobody, we suppose, would doubt the propriety of maintaining an action in the name of a corporation, legally created such by a statute of the United States.

Without pursuing these illustrations further, we think, so far as the point now under consideration is involved, the true principle is very clear. The national government has the power to pass a bankrupt law; to declare what shall constitute acts of bankruptcy, and under what circumstances a debtor shall be deprived of all personal control of his property; and to provide for the appointment of his legal representative, and vest in such representative all the rights of the bankrupt as to the institution of suits at law in his own name, as fully and effectually as the same would vest in an administrator appointed by the provisions of a state law.

It was urged, that to sustain this action would be in violation of the general rule that a chose in action must be enforced by a suit in the name of the original promisee. But in truth there is no more a violation of this general principle in one case than in the other. In both, the original party, who should thus sue in his own name, has ceased to exist as a legal person capable of instituting a suit on the contract. The bankrupt law, § 3, vests all the property in the assignee, and confers upon him full power to sue — as full as the bankrupt had; and a debt due to the bankrupt from any person is such right of property, and does thereby vest in the assignee, as was held in *Mitchell* v. *Great Works Milling & Manuf. Co.* 2 Story R. 648. The assignee thereby becomes the legal representative of the bankrupt, and entitled to sue in his own name, in the capacity of assignee, and this by force of a general law having effect throughout the whole Union.

2. We are then brought to the second question, whether

the statute itself has given exclusive jurisdiction, in all that concerns the property, real and personal, of the bankrupt, to the courts of the United States.

So many practical inconveniences would result from such a construction of the statute, and it is so far at variance with the ordinary course of legislation, in withdrawing the collection of debts from the local tribunals, that it may reasonably be required that the party asserting the proposition should establish it by clear and obvious provisions, found in the terms of the statute.

This exclusive jurisdiction in the courts of the United States is supposed to be conferred by the provision, in § 6 of the act, "that the district court, in every district, shall have jurisdiction in all matters and proceedings in bankruptcy arising under this act," and in the further provision in the same section, giving jurisdiction "as to all acts, matters and things to be done under and in virtue of the bankruptcy." It is conceded that here is given full jurisdiction to the district courts in the matter above recited. But this may be so, and yet the jurisdiction may not be exclusive ; as the words of the statute may have their full force and effect, without construing them as imposing absolute restrictions upon the state courts in the matter of jurisdiction of the same subjects.

The provision of § 3, that " the assignees may sue and defend, subject to the orders and directions of such court," is cited as sustaining the exclusive jurisdiction of the courts of the United States in all suits, but fails of sustaining that position. In *Ex parte Christy*, 3 How. 319, Story, J. in giving the opinion of the court, seems to consider that the phrase, " subject to the orders and directions of the district court," was intended to give the district court supervision of cases pending in the state courts, as well as those pending in the district courts ; not that the state courts might not entertain jurisdiction in relation to the property of the bankrupt, or aid in enforcing the collection of debts due to him ; but that such suits, while pending in the state courts, were under the con-

trol and supervision of the courts of the United States.[*] "Congress," it is said, "did not intend to trust the working of the bankrupt system solely to the courts of twenty six States."

In the diversity of views which has existed upon the subject of the supervision that may be exercised over the proceedings in the state courts by the United States courts, no judicial opinions that have been given have assumed the position, that the state courts were absolutely excluded from entertaining suits concerning the property or debts of a bankrupt. The point of controversy has been, not whether the state courts might not take jurisdiction of suits in relation to the property of the bankrupt, when acting in coöperation with the courts of the United States, and governed by their decisions, and applying their rules of law ; but whether the United States courts had not a controlling power that might be exercised. See *Mitchell* v. *Great Works Milling & Manuf. Co.* 2 Story R. 648.

It was further urged in the argument for the defendants, that the provisions of § 8 of the bankrupt act, that no suit at law or in equity shall in any case be maintained touching the property of the bankrupt, "in any courts whatever, unless the same shall be brought within two years after the declaration and decree of bankruptcy," clearly supposes an exclusive jurisdiction of all suits, in a matter concerning the property of a bankrupt, is vested in the courts of the United States. We do not perceive that this consequence follows. If the provision be a general one, as its words import, and it is intended to apply to all cases in bankruptcy, it is a statute of binding efficacy every where, and will be regarded as well in the state courts as in those of the United States. It will not, like the ordinary statute of limitations, be deemed a local law, to be administered in the particular State in which it was enacted, but a general law, applicable to each and every State of the Union, and to be of force and effect in all courts, state or national.

---

[*] See *Stinson* v. *McMurray,* 6 Humph. 339.

As yet, the statute is too recent to authorize us to expect, in the volumes of the reports of the various state courts that have been published, to find many cases of suits by assignees under the bankrupt act of 1841. We doubt not that many such will appear hereafter. Two such cases are already before us. In *Cornwell's Appeal,* 7 Watts & Serg. 305, where a question arose as to the right of property in the avails of certain real estate, the assignees of a bankrupt were parties, claiming the same in their capacity of assignees, and their claim was allowed, and the money ordered to be paid to them. In *Laflin* v. *Day,* 6 Met. 280, a writ of error was sued out by an assignee, and though contested on other grounds, neither in this or the preceding case was any doubt suggested as to the jurisdiction of a state court of an action by an assignee on contracts and liabilities of the debtors of the bankrupt.* The result to which we come is, that the state courts have jurisdiction in cases like the present ; that no exclusive jurisdiction, in suits concerning the property of the bankrupt, attaches to the courts of the United States in consequence of the rights of the assignee being acquired wholly under a law of the United States, nor is created by any provisions of the act itself, limiting and restraining suits by assignees, and requiring them to be instituted exclusively in the courts of the United States.

*Motion to dismiss overruled.*

* See *Ames* v. *Gilman, (ante,* 239.) *Comstock* v. *Grow* ١٧ Verm 515